IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
Northern Division

|  |  |
|---|---|
| **TONY HALSEY**<br>807 ANGEL VALLEY COURT<br>EDGEWOOD, MD 21040<br>[Harford County, MD]<br><br>          **Plaintiff**,<br>     v.<br><br>**HARBOR FREIGHT TOOLS USA, INC.**<br>26677 AGOURA ROAD<br>CALABASAS, CA 91302<br><br>SERVE ON REGISTERED AGENT:<br><br>CORPORATE CREATIONS NETWORK,<br>INC.<br>2 WISCONSIN CIRCLE, #70<br>CHEVY CHASE, MD 20815<br><br>          **Defendant**. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Tony Halsey (hereinafter "Plaintiff" or "Mr. Halsey"), through undersigned counsel, brings forth this Compliant and Demand for a Jury Trial and in support sets forth the following:

**NATURE OF SUIT AND THE PARTIES**

1.      Plaintiff is filing this complaint because of personal injuries that he sustained while using a defective Pittsburgh Pro, 3/8-inch-drive, 18-inch-long ratcheting breaker bar (the "Subject Product" or "Ratcheting Breaker Bar").[1]

---

[1] Harbor Freight item number 66388; now item 71407

1

2.      Mr. Halsey purchased the Subject Product from a Harbor Freight store in Harford County, Maryland.

3.      Mr. Halsey read and relied upon the Subject Product's instructions and warnings before using the product.

4.      Mr. Halsey relied upon Harbor Freight's representations regarding the product's durability and suitability for it application.

5.      Mr. Halsey sustained severe and permanent eye injuries while using the Subject Product because the Subject Product fractured as he was using it, shooting a metal shard from the Subject Product into his eye.

6.      At all times relevant to this action, Mr. Halsey was a citizen and resident of Harford County, Maryland.

7.      Defendant Harbor Freight Tools USA, Inc. ("Defendant" or "Harbor Freight") designed, manufactured, promoted, and sold the breaker bar that is the subject of this lawsuit.

8.      At all times relevant to this action, Defendant was a for-profit Delaware corporation and online retailer, with its headquarters located at 26677 Agoura Road, Calabasas, CA 91302.

9.      Defendant's registered agent is Corporate Creations Network, Inc., located in Montgomery County, Maryland at 2 Wisconsin Circle, #70, Chevy Chase, MD 20815.

10.     Defendant is a tool designer, manufacturer, retailer, and seller.

11.     Defendant sells tools through both online retail outlets and "brick and mortar" stores throughout the United States.

12.     Defendant operates the retail "brick and mortar" Harbor Freight store 00451, located in Harbor County, Maryland, at 1901-C Pulaski Hwy., Edgewood, MD 21040.

13.     Mr. Hasley purchased the Subject Product at Harbor Freight store 00451.

14.    Defendant additionally operates at least 20 other retail Harbor Freight stores in Maryland.

15.    Defendant maintains an interactive Harbor Freight retail website that can be visited by Maryland residents.

16.    Through the Harbor Freight website, Defendant conducted interactions and transactions with Maryland residents 24 hours a day, 7 days a week, 52 weeks of the year, including marketing, advertising, promoting, and selling products, including making personal purchase recommendations, accepting orders, receiving payments, and making deliveries to Maryland residents

17.    The Harbor Freight website is interactive to such a degree that it reveals Defendant's specific intent to target Maryland residents and to transact business or otherwise interact specifically with Maryland residents.

## JURISDICTION AND VENUE

18.    Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and complete diversity exists between Plaintiff and Defendant.

19.    This Court can exercise personal jurisdiction over Defendant under Maryland's Long-Arm Statute because Defendant at all relevant times intentionally targeted and distributed its products to Maryland consumers, including Plaintiff, transacted business in Maryland, contracted to supply services or goods in Maryland, operated at least 20 Harbor Freight retail stores in Maryland, has an interest in, uses, or possess real property in Maryland, caused tortious injury in Maryland to Plaintiff, and regularly does or solicits and engages in other persistent courses of conduct and derives substantial revenue from goods used or consumes or services rendered in Maryland. MD. CTS. & JUD. PROC. CODE ANN. § 6-103, *et seq.*

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant does business in this judicial district, subjecting the Defendant to personal jurisdiction in this action. Further, Plaintiff purchased the Subject Product from a Harbor Freight store in Edgewood, Maryland, which is in this district. Plaintiff was also injured by the Subject Product at his home in Edgewood, Maryland, which is also in this district.

21.    Assignment to the Northern Division is proper under 28 U.S.C. § 100(1).

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

22.    On November 10, 2021, Mr. Halsey purchased the Ratcheting Breaker Bar in-person at Harbor Freight store 00451.

23.    When purchasing and subsequently using the Ratcheting Breaker Bar, Mr. Halsey relied upon Harbor Freight's representations, including, but not limited to, Harbor Freight's representations that it made "quality tools" and that its tools were "durable."

24.    When purchasing and subsequently using the Ratcheting Breaker Bar, Mr. Halsey relied upon the absence of warnings that the product was subject to fracture or breakage.

25.    The absence of warnings other than "generic" warnings also affirmed in Mr. Halsey that the product was of good "quality," "durable," and suitable for its purpose.

26.    The Ratcheting Breaker Bar bears the brand "Pittsburgh Pro."

27.    Pittsburgh Pro is Defendant's "in-house brand" of tools made and sold exclusively by Defendant.

28.    Defendant manufacturers, labels, markets, warrants, and sells Pittsburgh Pro tools online and in stores in states all over the United States, including in Maryland.

29. On its website and elsewhere, Defendant represents and warrants that "Pittsburgh tools are known for their unbeatable value and exceptional quality."[2]

30. Upon information and belief, Defendant's in-store representatives are trained to make product-related representations to in-store customers that are the same or substantially same as those seen on Defendant's website.

31. Upon information and belief, Defendant's in-store representatives are trained to affirm with in-store customers such as Mr. Halsey, that Defendant's tools are durable and of good quality.

32. Harbor Freight sold the Ratcheting Breaker Bar to Mr. Halsey as a "new" item, meaning Harbor Freight sold it as an item that had never been used.

33. On its website, as pictured below, Harbor Freight is currently selling the same Subject Product that injured Plaintiff.[3]

---

[2] https://go.harborfreight.com/does-harbor-freight-make-pittsburgh-tools/#:~:text=Pittsburgh%20tools%20are%20made%20%26%20sold,and%20online%20at%20harborfreight.com. (last accessed 1/20/2025).

[3] https://www.harborfreight.com/38-in-drive-18-in-ratcheting-breaker-bar-71407.html  (last accessed 1/17/2025; emphasis with red line added to point to the ratcheting head).



**PITTSBURGH PRO** 3/8 in. Drive, 18 in. Ratcheting Breaker Bar

⭐⭐⭐⭐ (11)    Shop All PITTSBURGH PRO

## Product Overview

This PITTSBURGH PRO® 3/8 in. Drive, 18 in. Ratcheting Breaker Bar has a reversible ratcheting head for increased speed and convenience.

- Reversible ratcheting action
- 180° swiveling head
- Chrome-vanadium steel construction

34.    At all relevant times, there were no warnings in store, online, and/or on the product regarding the Subject Product's propensity to fracture.

35.    Upon information and belief, Harbor Freight does not warn customers in its stores that the ratcheting head of the Subject Product can break.

36.    Upon information and belief, Harbor Freight has never warned customers in its stores that the ratcheting head of the Subject Product can break.

37.    Upon information and belief, and research of prior versions of the Harbor Freight website, the picture below is the Subject Product's page as it appeared on the Harbor Freight website at the time Mr. Halsey purchased the Subject Product.



38.    Defendant made same or substantially same representations about the Subject Product in-store at the time when Mr. Halsey purchased it, thereby influencing Mr. Halsey's decision to purchase and use it.

39.    Consumers, like Plaintiff, use breaker bars, such as the Subject Product in this case, when they need a large amount of force to loosen a fastener, such as a lug nut.

40.    Breaker bars are designed with a handle that is significantly longer than most other wrenches.

41.    The longer handle is intended to provide the user with the necessary leverage and torque to "break" loose bolts that require relatively more force to loosen.

42.    Breaker bars, generally, are not ratcheting by design (herein commonly referred to as "standard" breaker bars).

43.     In recent years, product manufacturers, such as Defendant, have begun to make ratcheting designs.

44.     An example of a "standard" non-ratcheting breaker bar is illustrated below.  Note how the "head" (black in color) is attached through simple "u-joint" design:



45.     Ratcheting breaker bars are a newer and less common design than non-ratcheting "standard" breaker bars.[4]

46.     Ratcheting breaker bars incorporate a cylindrical ratcheting mechanism at the end or "head" of the metal bar.

47.     Standard non-ratcheting breaker bars are slightly more time consuming to use than ratcheting breaker bars.

48.     Harbor Freight markets ratcheting breaker bars as being faster to use than standard breaker bars.

---

[4]Harbor Freight currently has 13 breaker bars for sale on its website; only 2 of those 13 are ratcheting breaker bars: https://www.harborfreight.com/hand-tools/sockets-ratchets/breaker-bars.html (Last accessed 1/25/2025)

49. On its website, Harbor Freight states the ratcheting head of the Subject Product offers "increased speed and convenience."[5]

50. Harbor Freight additionally markets a slightly larger, but otherwise identical, Pittsburg Pro ratcheting breaker bar on its website.[6]

51. Harbor Freight markets the product referenced in the preceding paragraph as essentially a "two-for-one" product, in that combines a ratchet with a breaker bar, because it has the "torque of a breaker bar with the speed and convenience of a ratchet."[7]

52. The "head" portion of a ratcheting breaker bar is a more complex design than a standard non-ratcheting breaker bar.

53. More complexities in the working mechanics encompassing the "ratcheting" mechanism of a ratcheting breaker bar such as the Subject Product increase the risk of the head breaking.

54. In manufacturing ratcheting breaker bars, including the Subject Product, Defendant created and sold dangerously designed products that required warnings and adequate instructions for use.

55. Defendant should have considered and taken reasonable steps to address the increased risk of hazard that came with the ratcheting head design, but failed to do so.

56. Defendant should have implemented safer alternative design(s) for the Subject Product, but failed to do so.

57. An example of an alternative ratcheting breaker bar "head" produced by another non-Defendant manufacturer is shown below:

---

[5] https://www.harborfreight.com/38-in-drive-18-in-ratcheting-breaker-bar-71407.html (last visited 1/21/2025)
[6] https://www.harborfreight.com/hand-tools/sockets-ratchets/breaker-bars/12-in-drive-18-in-ratcheting-breaker-bar-67957.html (last visited 1/21/2025)
[7] https://www.harborfreight.com/hand-tools/sockets-ratchets/breaker-bars/12-in-drive-18-in-ratcheting-breaker-bar-67957.html (last visited 1/21/2025)



58.     Harbor Freight knew or should have known that ratcheting breaker bars are more prone to failure and fracture than standard non-ratcheting breaker bars.

59.     Regarding the Subject Product, Defendant should have, but failed to, consider the appropriate failure points and consequences of failure at all times during the process.

60.     The Subject Product that injured Plaintiff was defectively designed for several reasons.

61.     One reason is that Defendant implemented a "cap" style design on the head of the tool wherein the endcap of the ratcheting mechanism covers the tip of the tool.

62.     The cap design, among other design factors, rendered the product excessively prone to breakage and fracture of this "cap" portion.

63.     Defendant's "cap" design breaks and fractures at an unreasonably dangerous rate.

64.     When the "cap" breaks or fractures under force, the cap can fly off as a projectile.

65.     The flying cap projectile can hit users of the tool in the face.

66.     This "projectile" situation is exactly what happened to Plaintiff in the incident that forms the basis of this lawsuit.

67.    Upon information and belief, this "projectile" situation has happened to several other users of Defendant's ratcheting breaker bars, in addition to Plaintiff.

68.    Well before Mr. Halsey purchased the Subject Product, Harbor Freight customers had reported to Harbor Freight several incidents of fractured ratcheting breaker bar caps.

69.    The Harbor Freight website allows Harbor Freight customers to post reviews and product pictures to the website.

70.    Harbor Freight states on its website that "[w]e welcome your thoughts and suggestions as it relates to our products. Comments should be based on your direct experience and are most helpful when written as a recommendation or evaluation for a friend."[8]

71.    Harbor Freight states on its website that "[i] is important to, to us and to you, that our product reviews are authentic, unbiased, and accurately reflect the user's opinion."[9]

72.    A Harbor Freight website user posted on the Harbor Freight website in 2016 that the housing—or ratcheting head—broke on the first day of use and that it "shattered in two and hit my friend who was helping me."[10]



73.    Harbor Freight removed the above customer review from its website.

[8] https://www.harborfreight.com/customer-review-guideline.html (last visited 1/24/2025)
[9] https://www.harborfreight.com/preventing-fraud-scams (last visited 1/24/2025)
[10] https://web.archive.org/web/20160916192425/www.harborfreight.com/hand-tools/sockets-ratchets/3-8-eighth-inch-drive-ratcheting-breaker-bar-66388.html#pr-header-back-to-top-link (last visited 1/17/2025)

74.     Harbor Freight customers have posted other negative reviews of the Ratcheting Breaker Bar on the Harbor Freight website.

75.     Harbor Freight has removed other negative customer reviews of the Ratcheting Breaker Bar from the Harbor Freight website.

76.     A sample of negative reviews posted to older versions of the Harbor Freight website is pictured below.

77.     Harbor Freight removed the reviews in the pictures below from the Harbor Freight website.

78.     The reviews pictured below mention the ratcheting head "fracturing," or being "shattered," or that it "[b]lew apart first 5 seconds" after which "jagged pieces of the head went flying in multiple directions."

| ★★★★★ | Broke the first time I used it. | PB |
| ✓ Durability | will be returning. shattered at the head the first time I used it. | November 6, 2021 |
| | Was this helpful?   0   0   Report | |
| ★★★★★ | not very good quality | VERIFIED BUYER |
| ✓ Price | the second time I used it it broke the second time I used it it broke not even very much pressure on it. I did return it maybe this was a fluck but we'll see how this one holds up not happy with the first one. | October 6, 2021 |
| | Was this helpful?   0   0   Report | |
| ★★★★★ | Broke it 1st time using it | VERIFIED BUYER |
| ✓ Price | Wouldn't buy it again | April 28, 2021 |
| | Was this helpful?   0   0   Report | |
| ★★★★★ | Blew apart first 5 seconds | VERIFIED BUYER |
| ✓ Price | The housing for the ratcheting head is also the drive post as well. I placed this on the nut I wanted to break loose and as soon as I applied pressure, jagged pieces of the head went flying in multiple directions. The head and drive are manufactured from very weak machine injection molding (MIM) parts. Just buy a regular breaker bar or use it like a long handle ratchet on already free nuts and bolts. | February 24, 2021 |
| | Was this helpful?   1   0   Report | |

79.     Harbor Freight identified several customers in the above picture as a "verified buyer."

80.     On information and belief, a verified buyer means the review was submitted by someone who demonstrably purchased the product from Harbor Freight.

81.     On information and belief, Harbor Freight marks reviews as from a "verified buyer" to show the feedback is from a firsthand user to increase the authenticity of the review.

82.     Harbor Freight has removed complaints from verified buyers related to the same item as the Subject Product from its website.

83.     Harbor Freight has removed customer-uploaded pictures of broken ratcheting heads from its website.

84.     The pictures below are no longer found on the Harbor Freight website.

85.     The pictures below are captioned "Busted,"  "Junk," "Breaker bar broke," and ""Do not buy."

86.     In each picture, the ratcheting head is fractured near the middle of the head.









87.     The Ratcheting Breaker Bar's warning label does not warn that the ratcheting head

can break.

88.    Harbor Freight does not warn in its stores that the ratcheting head of the Subject Product can break.

89.    Harbor Freight knew or should have known the ratcheting head of the Subject Product could break before Mr. Halsey purchased it.

90.    Harbor Freight knew or should have known that the ratcheting head of the Subject Product could break before Mr. Halsey purchased it.

91.    Before Mr. Halsey purchased the Subject Product, Harbor Freight knew or should have known the ratcheting head of the Subject Product could break off into a hazardous projectile.

92.    Before Mr. Halsey purchased the Subject Product, Harbor Freight knew or should have known that the ratcheting head of the Subject Product could break off into a hazardous projectile.

93.    The Subject Product's warning label does not warn that the ratcheting head of the Subject Product can break off into a hazardous projectile.

94.    Harbor Freight removed pictures from its website of fractured ratcheting heads from the same item as the Subject Product.

95.    Harbor Freight removed negative customer reviews from its website that mentioned the same item as the Subject Product breaking.

96.    The Harbor Freight website has consistently described to consumers, including Plaintiff, that the Subject Product is durable, heavy duty, and made of chrome plated chrome vanadium steel.

97.    In 2016, Defendant's website stated the Ratcheting Breaker Bar "handles heavy torque requirements when other tools can't!"[11]

---

[11] https://web.archive.org/web/20160916192425/www.harborfreight.com/hand-tools/sockets-ratchets/3-8-eighth-inch-drive-ratcheting-breaker-bar-66388.html#pr-header-back-to-top-link (last visited 1/17/2025)

98.     On information and belief, Harbor Freight made similar representations about the Ratcheting Breaker Bar in its stores and through its sales representatives, which impacted consumers, including Plaintiff.

99.     A reasonable and ordinary consumer such as Plaintiff would reasonably rely on Harbor Freight's representations about the Ratcheting Breaker Bar.

100.    All such representations indicated to a reasonable user, such as Mr. Halsey, that the Ratcheting Breaker Bar was suitable for use as a breaker bar and that it was strong.

101.    On or about February 22, 2022, Mr. Halsey was using the Ratcheting Breaker Bar at home, and as Defendant intended, to loosen a lug nut on a car.

102.    As Mr. Halsey was pressing down on the handle of the Subject Product to loosen a lug nut, the ratcheting head fractured in two at the middle of the head, and a metal shard of the fractured head became a "projectile" and shot into his left eye.

103.    The following three pictures are of the fractured head of Mr. Halsey's Ratcheting Breaker Bar.

104.    The three pictures below show the ratcheting head fractured near the middle.

105.    The three pictures below are similar to the pictures above showing fractured ratcheting heads.







106. Mr. Halsey immediately went to the Emergency Room of Johns Hopkins Hospital in Baltimore, Maryland.

107. At the Emergency Room, he reported significant eye pain, bleeding from the eye, and a complete loss of vision in the eye.

108. Doctors at Johns Hopkins Hospital diagnosed Mr. Halsey with a left globe rupture, intraocular bleeding, and a dislocated lens.

109. Mr. Halsey underwent emergency eye surgery on February 28, 2022, at Johns Hopkins Hospital because of his injuries.

110. Mr. Halsey still suffers from pain and irritation in the eye, and he has a permanent loss of vision in the eye.

111. The Ratcheting Breaker Bar is defective because the ratcheting head cannot withstand the amount of force and torque that is commonly applied to breaker bars.

112. Harbor Freight expects consumers to apply a large amount of force to the Subject Breaker Bar.

113. Harbor Freight markets the Subject Breaker Bar as being able to withstand large amounts of user force.

114. The head/cap design of the Ratcheting Breaker Bar makes it more likely to break.

115. The head/cap design of the Ratcheting Breaker Bar is defective because it breaks at an unreasonable rate.

116. The head/cap design of the Ratcheting Breaker Bar makes it more likely to fracture into a projectile when it breaks.

117. The head/cap design of the Ratcheting Breaker Bar is defective because it is more likely to fracture into a projectile when the head breaks.

118. When the Ratcheting Breaker Bar is used in an ordinary and expected manner to loosen stuck or otherwise difficult to loosen lug nuts, as Mr. Halsey was using it, the head is prone to failure and fracture, and the fractured pieces are ejected with such force that they can cause serious injury.

119. Harbor Freight represents that the Ratcheting Breaker Bar is strong and durable.

120. Harbor Freight represents that the Ratcheting Breaker Bar can be safely used instead of a standard breaker bar.

121. Harbor Freight markets the Ratcheting Breaker Bar as at least as strong as a standard breaker bar.

122. Harbor Freight continues to promote the Ratcheting Breaker Bar alongside standard breaker bars.

123. Harbor Freight was on notice before Mr. Halsey purchased his Ratcheting Breaker Bar that the ratcheting head of the product was not strong.

124. Harbor Freight was on notice before Mr. Halsey purchased his Ratcheting Breaker Bar that the ratcheting head of the product could fracture during ordinary use.

125. Harbor Freight was on notice before Mr. Halsey purchased his Ratcheting Breaker Bar that the fractured pieces of the ratcheting head of the product could injure users.

126. Harbor Freight knew or should have known that safer alternative designs exist that were not implemented in the Ratcheting Breaker Bar.

127. Harbor Freight did not change the warnings of the Subject Product in response to customer complaints.

128. Harbor Freight did not change the design of the Subject Product in response to customer complaints.

129. Defendant has not changed the design of the Subject Product.

### COUNT I – Strict Liability (Defective Design)

130. Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

131. Defendant manufactured, marketed, distributed, and sold the Ratcheting Breaker Bar that injured Mr. Halsey.

132. The Ratcheting Breaker Bar design was defective and unreasonably dangerous in the condition it was sold to Mr. Halsey because it was designed such that the ratcheting head would fracture during foreseeable and ordinary use.

133. The Ratcheting Breaker Bar's design defects rendered it defective and unreasonably dangerous even when users used it in an ordinary and foreseeable manner, which was reasonably foreseeable by Defendant.

134. At the time of his injury, Mr. Halsey was using the Ratcheting Breaker Bar in a manner consistent with a use that was ordinary and reasonably foreseeable by Defendant.

135. At the time of sale from Defendant to Mr. Halsey, the Ratcheting Breaker Bar was defective and unreasonably dangerous.

136.    The Ratcheting Breaker Bar was defective at the time it left Defendant's control.

137.    The Ratcheting Breaker Bar was expected to, and did, reach Mr. Halsey without a substantial change in its condition.

138.    The Ratcheting Breaker Bar failed to perform safely as an ordinary consumer, such as Mr. Halsey, would expect when used in an intended or reasonably foreseeable manner.

139.    The benefits of the design of the Ratcheting Breaker Bar do not outweigh the risks of danger inherent in such a design, and reasonable alternative designs exist that would have eliminated the risk of fracture and injury posed by the design of the Ratcheting Breaker Bar.

140.    Reasonable alternative designs include, but are not limited to the following:

    a.  implementation of a standard non-ratcheting design;

    b.   implementation of a different ratcheting design where, when a failure occurs, an "internal" break occurs as opposed to an "external" break (cap flying off) such as what happens with the Subject Product; and/or

    c.   use of a higher-quality metal that will not break and fracture as easily as the incident product.

141.    As a result of the above, Defendant is liable under the theory of product liability.

142.    As a direct and proximate result of Defendant's defective design of the Ratcheting Breaker Bar, Mr. Halsey has permanent eye injuries requiring extensive hospitalization and medical treatment, and will continue to suffer:

    a.  severe pain and suffering;

    b.  economic damages for past and future medical care; and

    c.  permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

**COUNT II – Strict Liability (Failure to Warn)**

143. Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

144. Defendant manufactured, marketed, distributed, and sold the Ratcheting Breaker Bar that injured Mr. Halsey.

145. At all times relevant hereto, at the time the Ratcheting Breaker Bar left the Defendant's control, the product was not reasonably fit, suitable, or safe for its intended purpose because it failed to contain adequate warnings or instructions.

146. At all times relevant to this action, the product labeling for the Ratcheting Breaker Bar contained inadequate warnings and/or instructions including failure to warn users of the Ratcheting Breaker Bar's potential to fracture and cause serious injury to users.

147. The warnings and instructions provided to users of the Ratcheting Breaker Bar are "generic" warnings typed in extremely small print that are affixed to a plastic sheathing on the product.

148. The warning contained on the Subject Product contained the same or substantially same language as follows: "To prevent serious injury and property damage: 1. Wear ANSI-approved safety goggles & heavy-duty work gloves during use. 2. Use as intended only.  Do not use as a hammer, chisel, or pry bar.  Do not use handle extension to increase force or use on impact tool. 3. Inspect before every use; do not use if damaged.  4. Keep away from children.  Save these warnings."

149. The Subject Product's warnings and instructions contain no language regarding the Ratcheting Breaker Bar's potential to fracture and cause serious injury.

150. The "warning" language to "3. Inspect before every use; do not use if damaged." actually serves as an "anti-warning" because it does not adequately inform consumers, and the average reasonable and prudent consumer, including Plaintiff, interprets this language that product breakages or fractures would be visually evident to the naked eye before they occur, which is actually untrue, as the fractures that occur in the Subject Product are sudden and users are given no visual notice before they occur.

151. The dangerous condition of the Ratcheting Breaker Bar is not obvious to an ordinary user, and was not known by Mr. Halsey, because Defendant's failed to provide adequate warnings.

152. Plaintiff read and relied upon Defendant's inadequate warnings to his detriment.

153. Had Plaintiff received adequate warnings, it would have changed the outcome by either causing him to purchase a different breaker bar and/or implementing other additional safety measures.

154. As a direct result of Defendant's inadequate warnings, the Ratcheting Breaker Bar was in a defective condition at the time it left Defendant's control or possession and was unreasonably dangerous to the users of the product. Further, the product was expected to and did reach Mr. Halsey without change in its condition.

155. As a result of the above, Defendant is liable under the theory of product liability for failing to warn Mr. Halsey.

156. As a direct and proximate result of the Ratcheting Breaker Bar's inadequate warnings, Mr. Halsey has permanent eye injuries requiring extensive hospitalization and medical treatment, and will continue to suffer:

a.  severe pain and suffering;

b.  economic damages for past and future medical care; and

c.  permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## COUNT III – Strict Liability (Manufacturing Defect)

157.  Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

158.  Defendant manufactured, marketed, distributed, and sold the Ratcheting Breaker Bar that injured Mr. Halsey.

159.  At all times relevant hereto, at the time the Ratcheting Breaker Bar left the Defendant's control, the product was not reasonably fit, suitable, or safe for its intended purpose because it deviated materially from the Defendant's design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to Mr. Halsey.

160.  The Ratcheting Breaker Bar was in a defective condition when it left Defendant's control because of a flaw in the manufacturing process, workmanship, and/or materials of which the product was made.

161.  Upon information and belief, the Ratcheting Breaker Bar failed to meet manufacturing specifications in several ways including, but not limited to, failing to achieve appropriate material hardness due to deviations in manufacturing that rendered the subject Ratcheting Breaker Bar's metal defectively brittle and more prone to breaking under normal and expected force.

162.    The Ratcheting Breaker Bar was inherently dangerous and defective, unfit and unsafe for it intended use.

163.    The Ratcheting Breaker Bar, as manufactured, did not perform as intended.

164.    As a result of the above manufacturing defects, the Subject Product fractured and hit Plaintiff in the eye, causing him damages.

165.    Defendant is liable under the theory of product liability for a manufacturing defect.

166.    As a direct and proximate result of the Ratcheting Breaker Bar manufacturing defect, Mr. Halsey has suffered, and will continue to suffer:

   a.  severe pain and suffering;

   b.  economic damages for past and future medical care; and

   c.  permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## COUNT IV – Breach of Implied Warranty of Fitness and Merchantability

167.    Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

168.    Defendant knew, or had reason to know, that the Ratcheting Breaker Bar was dangerous for the use for which it was sold.

169.    Defendant had no reason to believe that Mr. Halsey or other consumers would recognize the dangerous nature of the Ratcheting Breaker Bar, specifically, that it would fracture during its ordinary and intended use.

170.    Mr. Halsey relied on Defendant's skill and judgment in manufacturing and selling products that were suitable and fit for their intended purposes.

171.    Mr. Halsey used the Ratcheting Breaker Bar in the manner in which Defendant's intended, and such use was foreseeable to Defendants.

172.    The product Defendant sold to Mr. Halsey was unfit for the particular purpose for which it was purchased, namely, to be used as a breaker bar to loosen stuck or otherwise difficult to loose fasteners and tire lug nuts.

173.    Mr. Halsey provided Defendant with pre-suit notice of Defendant's breach of warranty.

174.    As a direct and proximate result of Defendant's breach, Mr. Halsey has suffered, and will continue to suffer:

    a.    severe pain and suffering;

    b.    economic damages for past and future medical care; and

    c.    permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

<u>**COUNT V – Breach of Express Warranty**</u>

175.    Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

176.    Defendant knew, or had reason to know, that the Ratcheting Breaker Bar was dangerous for the use for which it was sold.

177.    Defendant represented to Mr. Halsey, and other consumers, that the Ratcheting Breaker Bar was strong, durable, and/or fit for use as a breaker bar.

178.    Such representations were made on Defendant's website and, on information and belief, in Harbor Freight stores.

179.    Mr. Halsey relied on Defendants representations about the Breaker Bar's strength in purchasing the product.

180.    Mr. Halsey provided Defendant with pre-suit notice of Defendant's breach of warranty.

181.    As a direct and proximate result of the Ratcheting Breaker Bar manufacturing defect, Mr. Halsey has suffered, and will continue to suffer:

    a.    severe pain and suffering;

    b.    economic damages for past and future medical care; and

    c.    permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

### COUNT VI – Negligence

182.    Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

183.    At all relevant times, Defendant had a duty to Plaintiff and to other foreseeable users of Defendant's products to exercise reasonable care in the design, manufacture, testing, inspection, processing, advertising, marketing, labeling, assembling, packaging, distribution, promotion, and sale of Defendant's products.

184.    Defendant had a duty to Plaintiff provide adequate and sufficient instructions concerning the proper use of the Subject Product.

185.    Defendant had a duty to Plaintiff to provide adequate and sufficient warnings of the risks and dangers associated with using the Subject Product.

186.    Defendant breached its duties to Plaintiff when Defendant failed to exercise reasonable care in the design, manufacture, testing, inspection, processing, advertising, marketing, labeling, assembling, packaging, distribution, promotion and sale of the Subject Product.

187.    Defendant failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks of using the Subject Product.

188.    Defendant is negligent in designing, manufacturing, testing, inspecting, processing, advertising, marketing, labeling, assembling, packaging, distributing, and promoting an unreasonably dangerous and defective product for reasons that include, but are not limited to, the following:

a.    The warnings and/or label accompanying the Subject Product do not warn that the ratcheting head can fracture or break;

b.    The warnings and/or label accompanying the Subject Product do not warn that, when it fractures, the ratcheting head can shoot off into hazardous metal projectiles that can cause serious injury;

c.    The warnings and/or label accompanying the Subject Product do not warn that the Subject Product is not as strong or durable as a standard, or non-ratcheting, breaker bar;

d.    The design of the Subject Product's ratcheting head increases the risk of it fracturing and breaking;

e.    The Subject Product's ratcheting head is made of lower-quality metal that cannot withstand the amount of force typically applied to breaker bars;

f.    The design of the Subject Product's ratcheting head increases the risk of metal shards flying off the head when it fractures;

189.    Defendant breached its duty to Mr. Halsey because it did not warn Mr. Halsey of any of the risks described in this Complaint of using the Subject Product.

190.    Defendant breached its duty to Mr. Halsey because it sold Mr. Halsey a product with a defective design and warnings, as described in this Complaint, that presented an unreasonable risk of harm to Mr. Halsey.

191.    Defendant makes claims on its website and in its stores that the Subject Product is strong, durable, and that it was as strong as a standard breaker bar.

192.    Contrary to Defendant's claims, the Subject Product is not as strong as a standard breaker bar, and the Subject Product has an unreasonably high risk of fracture and presents an unreasonably high risk of injury to users.

193.    Defendant knew, or should have known, through repeated website customer submissions and product reviews, that the Subject Product could fracture, break, and cause serious injuries to users.

194.    On information and belief, Defendant knew, or should have known, through other means, such as in-store returns and complaints, that the Subject Product could fracture, break, and cause serious injuries to users.

195.    Rather than incorporate these complaints into the design of the Subject Product and/or the warnings accompanying it, Defendant removed or otherwise hid negative customer complaints and pictures of broken ratcheting breaker bars from its website and never warned users, either online or in stores, of the risks associated with the ratcheting head design of the Subject Product.

196.    As a direct and proximate result of Defendant's negligence, Mr. Halsey has suffered, and will continue to suffer:

    a.  severe pain and suffering;

b.  economic damages for past and future medical care; and

c.  permanent physical scarring and loss of vision.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

**COUNT VII – Punitive Damages**

197.   Mr. Halsey incorporates and realleges all allegations made throughout this Complaint.

198.   Mr. Halsey is entitled to punitive damages because Defendant's wrongful acts and/or omissions were made with actual malice in conscious disregard of his rights and the rights of others.

199.   Defendant consciously maliciously misled the public, including Mr. Halsey, by making false representations about the durability, safety, and utility of the Ratcheting Breaker Bar.

200.   Defendant's misleading and false actions were affirmative in nature; as Defendant went out of its way to remove negative product reviews, maliciously manipulate its website by removing negative language, posting false characteristics regarding the safety and efficacy of its product, and posting false or otherwise fake positive reviews regarding the Subject Product.

201.   Defendant consciously and maliciously trained its in-store representatives to make false representations about the quality and suitability of its products which were false and overreaching in nature, while at the same time purposefully concealing the true dangerous and unfit nature of the Subject Product.

202.   Defendant's consciously, and with malice, failed to implement safety controls, including but not limited to modifying the design of the Subject Product and/or implementing increased warnings, and did so in order to increase Defendant's monetary gain.

31

203. Defendants intentionally misrepresented the safety of the Ratcheting Breaker Bar and intentionally refused to modify the design or the warnings. Rather, Defendants consciously chose to continue to sell the product with no warnings, while knowingly, consciously, and maliciously taking affirmative steps to conceal safety information from consumers.

204. Defendant acted with an evil mind in the ways described above and in the following ways, among others:

   a. Scrubbing customer complaints received through the Harbor Freight website so that future customers and/or regulatory agencies would not see them;

   b. Training its in-store sales representatives to only represent positive features of the product; and to willfully not say anything negative about the product;

   c. Purposefully prioritizing profits over safety by selling additional breaker bars despite the known dangers; and

   d. Maintaining and selling a product with a defective design despite feasible and safer alternative designs.

205. The above listed ways indicate a pattern and practice of Defendant to place corporate profits over the safety of its customers, such as Mr. Halsey.

206. As a direct and proximate result of the malicious, willful, wanton, evilly motivated and/or reckless conduct of Defendant, Mr. Halsey purchased the Subject Product.

207. Specifically, Mr. Halsey was induced into purchasing the product by Defendant's representations regarding the quality and suitability of the product which, as alleged above, the Subject Product was unsafe and was put onto the market as a product as part of a knowing, conscious, and malicious plan to induce consumers into purchasing the product.

208. As a result of Defendant's wrongful and malicious behavior, Mr. Halsey was injured by the Subject Product.

**WHEREFORE**, Mr. Halsey prays for judgment in his favor and against Defendant for an amount in excess of $75,000.00 plus costs of suit and any further relief the Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Halsey demands judgment against Defendant for damages in excess of $75,000.00, for:

(A) Compensatory damages for pain and suffering;

(B) Economic damages, including but not limited to past and future medical expenses;

(C) Punitive damages;

(D) Prejudgment and/or post-judgment interest; and

(E) All other equitable and legal relief to which this Court finds proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through counsel, demands a trial by jury.

Dated: January 27, 2025                          Respectfully submitted,

                                              */s/ Justin A. Browne*
Justin A. Browne (Bar No. 29164)
KETTERER BROWNE & ASSOCIATES, LLC
336 S. Main Street, Suite 2A-C
Bel Air, MD 21014
Phone: (855) 522-5297
Facsimile: (855) 334-5626
justin@kbaattorneys.com

Robert E. Price (*pro hac vice to be filed*)
FL Bar No. 85284
KETTERER BROWNE & ASSOCIATES, LLC
186 N. Palafox Street
Pensacola, FL 32502
Phone: (850) 805-7011
Facsimile: (850) 801-3190
robert@kbaattorneys.com

*Counsel for Plaintiff*

33